UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SALY VERRANDO, on Behalf of Themselves and Others Similarly Situated, ET AL., ) ) ) ) | |
| Plaintiffs, ) ) | CIVIL ACTION NO. 3:08-CV-2241-G |
| VS. ) ) | **ECF** |
| ACS STATE AND LOCAL SOLUTIONS, INC. d/b/a LDC COLLECTION SYSTEMS, ) ) ) ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, ACS State and Local Solutions, Inc., d/b/a/ LDC Collection Systems ("ACS"), to dismiss the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is granted.

### I. BACKGROUND

On December 19, 2008, Sally Verrando, Stephen Ochs, and James Sigler (collectively, "plaintiffs"), filed this case against ACS on behalf of themselves and

others similarly situated, alleging that their suit should be certified as a class action. Original Complaint ("Complaint") ¶ 13.

The plaintiffs' claims arise out of a "Notice of Violation" for "Running a Red Light" each received in violation of the City of Dallas, Texas's Code of Ordinances, Article XIX, Section 28.207. Complaint ¶ 9. Each of the plaintiffs individually received such a "Notice of Violation" on the following dates: Sally Verrando on or about November 12, 2008; Stephen Ochs on or about November 20, 2008; and James Sigler on or about January 23, 2008. *Id.*

Plaintiffs aver that ACS is the party that sold red light cameras to the City of Dallas. *Id.* ¶ 12. Presumably, the City of Dallas issued violations to the plaintiffs on the basis of photographs taken by these red light cameras operated by ACS. *Id.* To engage in such an enterprise, the plaintiffs allege, ACS is required to possess a license under Texas Occupations Code 1702.101, *et seq.*, which ACS allegedly does not have. *Id.* ¶¶ 5, 11, 12.

The plaintiffs allege negligence *per se* based on violations by ACS of the Texas Occupations Code, § 1702.101, *et seq.* (Vernon 2004), and Texas Transportation Code, § 707, *et seq.* (Vernon 2004). Complaint ¶¶ 17-23. Texas Occupations Code § 1702.101 states that a person may not act as an investigations company unless he or she holds a license. Under this statue, a person (or company) acts as an investigations company if he/she/it "engages in the business of securing, or accepts

employment to secure, evidence for use before a court, board, officer, or investigations committee." *Id*. § 1702.104(a)(2). Texas Transportation Code, § 707.001, *et seq.*, became effective on September 1, 2007, as a means for establishing the procedure by which local entities could use cameras at stop lights to photograph and cite drivers who illegally run through red lights. Complaint ¶ 10. This includes the means by which a municipality can contract for certain duties to be performed by a vendor. *Id.* ¶ 21. The plaintiffs allege that ACS has been reporting non-payment of citations to the credit bureau, resulting in a violation of the statute, and is negligence *per se*. *Id*. ¶¶ 22-23.

ACS moves to dismiss the plaintiffs' claims against it on the grounds that (1) the plaintiffs lack standing to pursue their negligence *per se* claims under the Texas Occupations Code, and (2) the Texas Transportation Code does not create a duty actionable in tort.

II. ANALYSIS

A. Standing Requirement

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. CONST. ART. III § 2. Standing -- *i.e.*, the need to demonstrate that the plaintiff has a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The federal courts are under an

independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990)) (internal quotation marks omitted); see also *Sommers Drug Stores Company Employment Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal.") (quoting *Safir v. Dole*, 718 F.2d 475, 481 (D.C. Cir. 1983), *cert. denied*, 476 U.S. 1206 (1984)); *University of South Alabama v. American Tobacco Company*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction. See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541(1986)); see also *Corrigan*, 883 F.2d at 348 ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court.") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction. See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)), *cert. denied*, 454 U.S. 897 (1981). The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).

Moreover, while the burden is on the party seeking to invoke the federal court's subject matter jurisdiction to establish the requisite standing requirements,

that burden need be met only by a preponderance of the evidence.  See *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

      Here, ACS correctly states that the plaintiffs lack standing because they cannot show the invasion of a legally protected right, nor can the plaintiffs demonstrate a causal connection between ACS's supposed violation of the statute and the plaintiffs' injury.  Brief in Support of Defendant's Motion to Dismiss ("Motion") 5-6.  The plaintiffs do not definitively state a right which they believe has been invaded.  It seems clear, however, that the injury they have suffered, *i.e.*, the civil fine paid, occurred due to the fact that they each in turn failed to stop at a red light and thus were captured on a camera and fined.  The plaintiffs do not contest the accuracy of the camera, nor the unlawfulness of their conduct, but only the need to pay a fine based on the evidence collected by ACS and reported to the City of Dallas.  "However, [p]laintiffs do not have a legally protected right to engage in illegal conduct and be free from the consequences of that activity."  *Bell v. Redflex Traffic Systems, Inc.*, Number 4:08-CV-444-MHS-DDB, at 5 (E.D. Tex. March 25, 2009) (unpublished opinion) (Schneider, J.), *attached to* Appendix to Reply Brief in Support of Defendant's Motion to Dismiss at A214.

> "It is not enough to establish standing that an identifiable interest has been injured.  The injured interest must be one that the courts will recognize for standing purposes . . . [For example,] [i]f customs officials were to institute a new and rigorous policy for inspecting packages brought in from other countries, standing would readily be recognized for

> plaintiff who asserted an interest in personal privacy. Standing probably would be recognized for a business firm that asserted a commercial injury arising from increased delay or expense.  Standing would not be recognized for a smuggler who asserted that his drug traffic was disrupted. Although the smuggler may have been injured in fact, and the inspection procedures might indeed be unlawful, the asserted interest is not one the courts will protect."

WRIGHT & MILLER, 13A FED. PRAC. & PROC. § 3531.4 (West 2008).  Similarly, in the instant case, the plaintiffs are attempting to contest their civil fines for an illegal action of running a red light by stating that the investigation procedure was not lawful under the Texas Occupations Code.

In their response brief, the plaintiffs contend that another injury they have suffered is the use of evidence secured by an unlicensed company in the issuing of their civil fines.  Response to Motion to Dismiss filed by Defendant ACS State and Local Solutions Inc., d/b/a LDC Collection Systems at 2.  They contend that the gathering of such information is a violation of their right to privacy.  *Id.*  However, "the courts do not concern themselves with the method by which a party to a civil suit secures evidence pertinent and material to the issues involved, and which he adduces in support of his contention, and hence evidence which is otherwise admissible may not be excluded because it has been illegally and wrongfully obtained."  *Allison v. American Surety Company of New York*, 248 S.W. 829, 832 (Tex. Civ. App.--Galveston 1923, no writ).  "Evidence illegally obtained is admissible in civil cases under the common-law rule."  *State v. Taylor*, 721 S.W.2d 541, 551 (Tex.

App.--Tyler 1986, writ ref'd n.r.e.) (appraisal conducted by an unlicensed real estate broker was admissible in a condemnation case).

Further, the plaintiffs have failed to allege any facts that show that the plaintiffs' privacy interests were violated. *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973) (defining privacy interests); see also *Webb v. Glenbrook Owners Association, Inc.*, __ S.W.3d. __, 2009 WL 2396463, *9 (Tex. App.--Dallas, August 6, 2009) (elements of a claim of invasion of privacy); see also *Bell*, Number 4:08-CV-444-MHS-DDB, at 4 ("Plaintiffs do not have a protected privacy interest while sitting in their vehicles in a public intersection"). Moreover, the facts alleged by the plaintiff do not fit under any of the categories of the tort "invasion of privacy" outlined in *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977). Those categories include: "(1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs. (2) Public disclosure of embarrassing private facts about the plaintiff. (3) Publicity which places the plaintiff in a false light in the public eye. (4) Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Industrial Foundation*, 540 S.W.2d at 682-83. The plaintiffs also attempt to draw on the comparison of the federal wiretap statutes discussed in *Collins v. Collins*, 904 S.W.2d 792 (Tex. App.--Houston [1st Dist.] 1995, writ denied). However, "the wiretap statutes involve intrusion into a traditionally recognized zone of privacy" within private homes,

whereas a public intersection does not fit within this category. *Bell*, Number 4:08-CV-444-MHS-DDB, at 7; see also *Hudson v. State*, 588 S.W.2d 348, 351-52 (Tex. Crim. App. 1979) (holding it was not a violation of privacy to photograph the exterior of a car parked in a public parking lot).

Moreover, the plaintiffs have not actually alleged that they were the persons driving the car at the time of the photograph, and "Texas does not permit a plaintiff to recover for injury caused by the invasion of another's privacy." *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1093 (5th Cir. 1984), *cert. denied*, 469 U.S. 1107 (1985).

The plaintiffs also have failed to show a causal connection between the alleged violation of the Texas Occupation Code by ACS and an injury to them. See *Lujan*, 504 U.S. at 560 ("[T]here must be a causal connection between the injury and the conduct complained of- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant"). The plaintiffs have not alleged that the accuracy of the red light cameras was flawed or that the pictures taken were not accurate. There are no facts in the plaintiffs' complaint to support the idea that ACS's failure to acquire an investigation license was the cause-in-fact of the injury of receiving the civil fines. Even if the court assumes *arguendo* that ACS had possessed the license that is allegedly required, there would still be no change in the outcome of the civil fines paid by the plaintiffs. Accordingly, the plaintiffs' negligence *per se* claim based on

Texas Occupations Code § 1702.101, *et seq.*, is dismissed due to lack of standing by the plaintiffs.

### B.  Rule 12(b)(6) Motion to Dismiss

#### 1.  *The Rule 12(b)(6) Standard*

The defendant moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)), *cert. denied*, __ U.S. __, 128 S.Ct. 1230, 170 L.Ed.2d 63 (2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. At 1964-65 (citations, quotation marks, and brackets omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1965).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area*

*Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).  Even so, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (May 18, 2009).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'shown[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting FED. RULE CIV. PROC. 8(a)(2)).

### 2.  *Texas Transportation Code*

The plaintiffs fail to state a claim under a theory of negligence *per se* based on Texas Transportation Code, Section 707.001, *et seq*., because the statute is not applicable to the contract entered into between the City of Dallas and ACS.  Based on the legislative history, this code section only applies to contracts entered into on or after September 1, 2007.  *See* Acts 2007, 80th Leg., ch. 1149 (S.B. 1119), § 9 (Lexis 2007).  The contract between the City and ACS which allowed ACS to install and operate red light traffic cameras was signed on October 31, 2006.  *See* Appendix to Defendant ASC State & Local Solutions, Inc. d/b/a LDC Collection Systems' Brief in Support of Defendant's Motion to Dismiss at A38; Motion at 16.  Thus, this contract is not subject to the terms of Texas Transportation Code, Section 707.003,

and the plaintiffs have failed to state any facts in the complaint showing otherwise.

Accordingly, ASC's motion to dismiss the plaintiffs' negligence *per se* claim under the

Texas Transportation Code is granted.

### III.  CONCLUSION

For the reasons discussed above, the plaintiff's claims on the theory of

negligence *per se* based on the Texas Occupations Code, § 1702.101 *et seq.*, and the

Texas Transportation Code, § 707.001 *et seq.*, are **DISMISSED**.<sup>*</sup>

**SO ORDERED**.

September 15, 2009.

*(signature: A. Joe Fish)*

**A. JOE FISH**
**Senior United States District Judge**

---

\*  As noted above, failure of the plaintiffs to establish standing means that the court lacks subject matter jurisdiction. The court may also lack subject matter jurisdiction for another reason. The basis of such jurisdiction alleged by the plaintiffs is diversity of citizenship and an amount in controversy of at least $75,000.00. *See* Complaint ¶ 6. This amount apparently consists of the plaintiffs' "actual damages sustained from the issuance of the ticket, reasonable attorney's fees, and punitive damages in an amount of not less than Three Million Dollars ($3,000,000.00)." *Id*. ¶ 19. However, as pointed out by the defendant, the plaintiffs have not pleaded facts by which, under Texas law, they could recover either punitive damages or attorney's fees. Motion at 20-21. Thus, plaintiffs' damages may consist only of the civil fines they have paid, which appear to fall well short of $75,000.00.